**Heidi R. CAMACHO, Plaintiff,**

v.

**HOLIDAY HOMES, INC., Defendant.**

No. 7:01CV00224.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 26, 2001.

David Dennis Beidler, Legal Aid Society of Roanoke Valley, Roanoke, VA, Henry Lavinder Woodward, Legal Aid Society, Roanoke, VA, for Plaintiff.

Clark H. Worthy, Bryan Grimes Creasy, Brian James Brydges, Johnson, Ayers & Matthews, Roanoke, VA, for Defendant.

*Memorandum Opinion*

WILSON, Chief Judge.

■ Plaintiff Heidi R. Camacho ("Camacho"), proceeding *in forma pauperis*, brings this action against Defendant Holiday Homes, Inc. ("Holiday") for damages arising out of Camacho's purchase of a manufactured home under a retail installment contract. Camacho alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640, Virginia's Uniform Commercial Code, and common law trespass. The court has jurisdiction pursuant to 15 U.S.C. § 1640 and 28 U.S.C. § 1331, 1337. The court may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. This case is before the court on Holiday's motion to dismiss for lack of subject matter jurisdiction,[1] or, alternatively, to compel arbitration. Finding that jurisdiction over these claims is proper, and that Camacho has demonstrated that the contract's arbitration clause precludes Camacho from vindicating her statutory rights under the TILA because the arbitral forum is financially inaccessible to her, the court denies Holiday's motion.

## I.

Camacho executed a retail installment contract, effective March 31, 2000, with Holiday for the installment purchase of a new manufactured home for herself and her three young children. The contract was a pre-printed form provided by Holiday and contained an arbitration clause that provides, in pertinent part, as follows:

1. In support of its motion to dismiss, Holiday argues that this court lacks subject matter jurisdiction because the arbitration clause contained in the contract Camacho signed encompasses all her claims and binds her to resolve them in an arbitral forum. The court disagrees. The threshold issue in this case is whether the arbitration clause is enforceable.

ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:

**a. Dispute Resolution.** Any controversy or claim between or among you and me or our assignees arising out of or relating to the Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

The arbitration clause does not mention the costs of arbitration or which party is responsible for paying them. However, the contract provides that "[t]he Commercial Rules of the American Arbitration Association ... apply" to any arbitration arising from the contract.

That question is for the court. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Accordingly, this court properly exercises subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1640, and will deny Holiday's motion to dismiss.

Camacho brought this suit on March 28, 2001 claiming that Holiday violated the TILA, the Virginia Uniform Commercial Code, and committed common law trespass. On the same day, the court granted Camacho's application to proceed *in forma pauperis,* thereby exempting her from the court's $150 filing fee. Camacho is the only claimant in this action. On May 25, 2001, Holiday moved to dismiss for lack of subject matter jurisdiction, or, alternatively, to compel arbitration. On August 1, 2001, Camacho filed a brief in opposition to Holiday's motions arguing, in part, that the arbitration provision is unconscionable because the excessive fees associated with the arbitration of her claims prohibit her from accessing the arbitral forum.

The parties stipulate to the following facts regarding the potential arbitration of their dispute. According to the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), a party initiating a claim the size of Camacho's (between $75,000 and $150,000) must pay an initial filing fee of $1250, and, after a scheduling conference, a case fee of $750 before the case can proceed to an evidentiary hearing. If the initiating party ultimately prevails, it may be awarded those fees by the arbitrator in the final disposition of the case. The rules permit the initiating party to apply for a waiver, reduction, or deferral (complete or partial) of these administrative fees due to "extreme hardship." The AAA's accounting department determines which claimant should be afforded "extreme hardship" status. There are no formal standards that govern the accounting department's determination. In practice, the complete waiver of a fee is extremely rare; partial deferral is the usual response when hardship is established. The arbitrator may assess the losing party any deferred fee as part of the arbitrator's final award.

After a party initiates a claim with the AAA, the Commercial Arbitration Rules provide that the parties may not proceed until they pay the arbitrator's fee and expenses. Each party is responsible for half those costs. The arbitrator selected by the parties sets the arbitration fee, which typically ranges between $100 and $300 per hour, for a minimum of one full day for hearings, plus the arbitrator's additional preparation and research time before and after the hearing. There is only one qualified arbitrator in the Roanoke area. It is possible, therefore, that the arbitrator chosen by the parties would have to travel to hear their dispute. Arbitrators customarily charge their hourly rate for travel time. Thus, regardless of who pays the initial administrative fees, the arbitration will not proceed until both parties pay their half of the arbitrator's fees. Camacho suggests that the total amount of an arbitrator's fees will likely range between $1200 (assuming $100 hourly fees for one hearing plus time for preparation and resolution without travel or other expenses) and $8000 (assuming $300 hourly fees for 24 hours of hearings, preparation, resolution, and travel, plus accommodation expenses). Holiday does not dispute these figures.

On July 26, 2001, Camacho filed a declaration of her financial condition. Camacho indicates that she provides sole support for herself and her three children, ages 18, 13, and 10. Though she is entitled to child support amounting to $600 per year, she rarely, if ever, is able to collect those payments. She received no child support from February 2001 through at least July 2001. Camacho works as a waitress at a local restaurant where she earns an average weekly income, including tips, of $300. Camacho attends Virginia Western Community College part-time, taking two classes per semester towards an associates degree in sociology. These classes typically require 12 to 18 hours per week for

preparation and attendance. Because of her financial hardship, Camacho receives a $1200 Pell grant or similar award per semester, which is insufficient to cover her tuition, books, travel and living expenses related to her education. She owes $14,125 in old student loans which have been deferred until she finishes school.

Camacho declares that due to her limited income, her family currently shares a house with another family. Camacho is not responsible for rent but pays for one half of the other household expenses. Her share of those expenses consist of the following monthly amounts: electricity, including heat and well pump, $60–75; telephone, $20; food, $430. Camacho claims that she is solely responsible for the following monthly expenses: daughter's drug prescriptions, $40; car payments, $260; car insurance for herself and her daughter, $128; gasoline, $100; and occasional expenses for clothes and other needs. Camacho also claims that she is paying her daughter's car payment, $140 per month, until her daughter gets a job. At the time of filing her declaration, she expected to spend about $300 for back-to-school clothes and supplies for her two youngest children, for whom she shops at thrift stores.

Camacho claims that she cannot afford health insurance, and that she currently owes Community Hospital $445. She owns nothing that would provide collateral for a loan. Her car is a 1997 Ford Taurus valued at $6000, on which she still owes about $5000. Camacho declares that she cannot afford to pay any significant costs associated with the adjudication of her dispute.

## II.

■ Typically, in determining whether federal statutory claims must be arbitrated, a court must resolve two issues. First, the court must determine whether the parties agreed to submit their present claims to arbitration. *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Second, the court must ask whether Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* However, recent Supreme Court precedent requires that this court consider a third issue. In *Randolph,* the Court indicated that "the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* Thus, a party seeking to avoid arbitration may "invalidate an arbitration agreement" by "showing the likelihood of incurring such [prohibitive] costs." *Id.* Once the likelihood of prohibitive costs are established, the onus is on the party seeking arbitration to provide contrary evidence. *Id.* at 92, 121 S.Ct. 513. Therefore, the court must determine whether Camacho has demonstrated that the arbitration clause at issue prevents her from effectively vindicating her rights under the TILA because the costs of arbitration render that forum inaccessible to her. The court will consider Camacho's motion to compel arbitration by addressing these three issues, in turn.

■ First, the court finds that the parties agreed to arbitrate the claims currently before the court. Camacho asserts that the arbitration clause provides for elective rather than mandatory arbitration. She rests this argument entirely on the first sentence of the arbitration clause which provides that arbitration of any claim shall be determined by arbitration "if requested by you or me." In so doing, Camacho fails

even to acknowledge the plain language of the very next sentence mandating that "[a] controversy involving only a single claimant ... shall be determined by arbitration as described below." Camacho does not dispute that she voluntarily signed the contract containing the arbitration clause or that she is the only claimant in this action. However, she alleges in her complaint, though not in her brief opposing this motion, that Holiday did not provide her with an opportunity to read the contract before signing it. The failure to provide such an opportunity is of no consequence. It is well settled that a party to a written contract is responsible for "inform[ing][her]self of its contents before executing it, ... and in the absence of fraud or overreaching [she] will not be allowed to impeach the effect of the instrument by showing that [she] was ignorant of its contents or failed to read it." *Corbett v. Bonney*, 121 S.E.2d 476, 480, 202 Va. 933, 938 (1961). Accordingly, the court finds that because Camacho is the only claimant in this action, the parties agreed that her claim would be resolved through arbitration.

Second, Camacho "bears the burden of establishing that Congress intended to preclude arbitration" of her TILA claims. *Randolph*, 531 U.S. at 91–92, 121 S.Ct. 513

(citing *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647; *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). Because Camacho does not raise the issue, the court assumes, without deciding, that Congress did not intend to preclude the arbitration of her claims under the TILA.

▮ Third, the court finds that Camacho has adequately demonstrated that the arbitral forum provided for in the contract is financially inaccessible to her, and, therefore fails to ensure that she can vindicate her statutory rights under the TILA.[2] At the outset, the court notes that in *Randolph*, the record did not contain any useful evidence regarding the cost of arbitration, and that the Court, therefore, refused to invalidate the arbitration agreement based on the mere "risk" that the plaintiff would "be required to bear prohibitive arbitration costs." *Randolph*, 531 U.S. at 90, 121 S.Ct. 513. Here, however, in contrast to the plaintiff in *Randolph*, Camacho has presented substantial evidence that the costs of arbitrating her claims would preclude her from vindicating her federal statutory rights.

The arbitration clause does not indicate directly which party will be responsible for the costs of initiating arbitration. Instead,

2. Although Camacho claims that the arbitration clause is unenforceable because it is unconscionable, she relies heavily on *Randolph* to support her claim. Moreover, in urging the court to consider whether the arbitration agreement allowed Camacho to "vindicate [her] statutory rights in the arbitral forum," *Mitsubishi Motors*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), Camacho offers the court the standard appropriate for analysis of her claim under *Randolph*. *Randolph* did not evaluate the arbitration clause in issue under the equitable doctrine of unconscionability, but rather asked whether the plaintiff had established "that arbitration would be prohibitively expensive," 531 U.S. at 92, 121 S.Ct. 513, thereby precluding her

from "effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90, 121 S.Ct. 513. The Fourth Circuit has repeatedly indicated that the circumstances in which a court may find an arbitration agreement unconscionable are limited, and that arbitrators should generally decide whether arbitration procedures are fair. *See Hooters of America v. Phillips*, 173 F.3d 933, 940 (4th Cir.1999); *Sydnor v. Conseco*, 246 F.3d 668, No. 00–2304, 2001 WL 223243 (4th Cir. March 7, 2001) (unpublished). Therefore, the court today declines to decide whether the arbitration clause is unconscionable, and instead analyzes it under the principles articulated by the Supreme Court in *Randolph*.

it provides that "[t]he Commercial Rules of the American Arbitration Association ("AAA") . . . shall apply" to the arbitration of any claim. The parties stipulate that, under those rules, Camacho must pay an initial filing fee of $1250 to initiate her claim and a $750 case fee shortly thereafter.[3] Camacho could not recover those fees, unless she ultimately prevailed on her claim. Even if she prevailed, however, Camacho does not have $2000 to pay the fees in the first place, and she has no collateral with which she could obtain a sufficient loan. Though Camacho may apply for fee deferral or reduction due to "extreme hardship," the parties stipulate that waiver of fees is extremely rare in practice. The AAA does not provide formal standards for granting hardship, and its accounting department actually determines who is afforded "extreme hardship" status.

However, even if the initial $2000 in administrative fees were waived or deferred, Mrs. Camacho has demonstrated that the additional costs of the arbitration process itself amount to an insurmountable financial barrier to her. To proceed in arbitration, Camacho would be responsible for paying one-half of the anticipated fee and expenses of the arbitrator. Since there is only one qualified arbitrator in the Roanoke area, it is possible that another arbitrator would have to travel to the Roanoke area to hear the parties' dispute. Camacho has shown that an arbitrator would require payment ranging from $600 (one-half the cost of the cheapest arbitrator for 12 hours and no expenses) to $4100 (one-half the cost of the most expensive arbitrator for 24 hours and $1000 travel and accommodation expenses).[4] The parties stipulate that these fees are not subject to waiver or deferral for "extreme hardship." In acknowledgment of Camacho's strained financial condition, this court found her unable to pay the $150 filing fee normally required to initiate the claim it now considers. In view of these facts, the court finds that Camacho's limited income affords no margin for expenses of the magnitude required to pay an arbitrator to consider her claim.

Accordingly, the court concludes that Camacho has successfully demonstrated that the arbitration clause precludes her from effectively vindicating the rights afforded her by the TILA because the arbitral forum is financially inaccessible to her. Holiday does not contend that the arbitral forum is not prohibitively expensive. Therefore, the court finds that the arbitration clause is unenforceable. In the event, however, that Holiday agreed to bear the costs associated with the arbitration, the court would entertain a motion to reconsider its ruling on that basis.

### III.

For the foregoing reasons, the court denies Holiday's motions. An appropriate order will enter this day.

### *Order*

In accordance with the Memorandum Opinion filed today, the Defendant's motion to dismiss, or, alternatively, to compel arbitration is **DENIED**.

---

**3.** To date, Holiday has neither initiated arbitration of the parties' dispute nor indicated that it would pay the fees necessary to do so.

**4.** It is impossible to establish the exact amount Camacho would have to pay because the arbitrator sets the amount after the arbitration has been initiated.