[No. 20317-4-III. Division Three. May 2, 2002.]

WENCESLAO MENDEZ, *Respondent*, v. PALM HARBOR HOMES, INC., ET AL., *Appellants*.

448

*David C. Burkett* (of *Burkett & Burdette*), for appellants.
*David B. Trujillo*, for respondent.

BROWN, C.J. — Wenceslao Mendez filed a lawsuit against Palm Harbor Homes, Inc. (Palm Harbor) and its surety, Travelers Casualty and Surety Company of America (Travelers), in connection with a failed mobile home sale. Palm Harbor and Travelers (collectively Palm Harbor) moved to compel arbitration pursuant to the contract and a separate arbitration agreement. The trial court denied the motion in essence because of the prohibitive entry costs of arbitration compared to the entry costs of trial. Palm Harbor appealed. Although technically moot because the trial court denied the motion to compel arbitration, Mr. Mendez nevertheless cross-appealed the trial court's ruling that the Consumer Protection Act and other statutory claims were ordinarily arbitrable.

We hold for the first time in Washington that Mr. Mendez's statutory claims are generally arbitrable under chapter 7.04 RCW. Next, we approve a new rule for this State allowing an equitable and legal prohibitive cost defense to contractually agreed arbitration under chapter 7.04 RCW. Lastly, we clarify that the use of out-of-state unpublished opinions is inappropriate under RAP 10.4(g) and (h). Accordingly, we affirm.

## FACTS

Mr. Mendez did not complete high school. He worked two jobs to earn less than $20,000 annually and supports a family of five.

In September 2000, Mr. Mendez paid $1,000 down on a $12,000 used mobile home offered for sale by Palm Harbor at its Palm Harbor Village dealership in Union Gap. The backside of Palm Harbor's preprinted sales contract provided for attorney fees in the event of legal action to enforce the contract.

The contract contained the following arbitration clause:

*Arbitration and Disputes*: Disputes arising out of this Agreement are subject to compulsory and binding arbitration in accordance with the following provisions and conditions:

(a) *Enforcement.* Upon the election and written demand by either party showing the existence on a bona fide controversy and to the full extent permitted by law, arbitration shall be the exclusive procedure for resolving disputes and shall be binding upon the parties. Arbitration shall be commenced and enforced pursuant to RCW 7.04 and procedure shall be governed by the civil rules for superior courts for the State of Washington and the evidentiary rules thereto. The parties agree arbitration shall be by a three person panel: one selected by each party and one selected by the two arbitrators. Arbitration shall be held in Yakima County, Washington.

(b) *Scope of Arbitration.* Arbitration shall extend to and the arbitrators shall have the power to decide all matters and issues of fact and/or law, including, but not limited to, the existence of the validity of the Agreement as contract including the issue of fraud and inducement or in its construction, performance or breach and enforceability, operation or duration. The arbitrators shall give full force and effect to all lawful terms of the Agreement whether expressed or implied in fact. The arbitrators shall further have power to decide the appropriate remedies, including damages, restitution, awarding of interest, costs and reasonable attorneys' fees and costs of arbitration. Arbitration shall not be binding on or extend to any lender or other third party who has acquired rights arising out of any financing or consumer credit contracts and/or security agreements which may be a part or supplement the Agreement.

Clerk's Papers (CP) at 119. Mr. Mendez initialed the back-side of the contract.

Mr. Mendez also signed a separate arbitration agreement partly stating:

The parties to the Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home which is the subject of the Retail Installation Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final

and binding arbitration before a three-judge panel of the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA. Judgment on the arbitration award may be entered in any court having jurisdiction.

. . . .

The parties agree that any contests to the validity or enforceability of this Arbitration Provision, or any other part of the Retail Installment Contract or Cash Sale Contract or related documentation, will be determined by arbitration in accordance with the terms of this Arbitration Provision.

The parties understand they have the right to have any disputes between them decided in court, but they choose instead to have any disputes decided by arbitration in order to avoid the burden, expense and uncertainty of the judicial process.

**THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.**

CP at 120.

In February 2001, after a dispute arose between Mr. Mendez and Palm Harbor regarding payment and delivery, Mr. Mendez filed a complaint for specific performance and/or damages against Palm Harbor and Travelers in the Yakima County Superior Court. The complaint included alleged violations of the dealers and manufacturers act, chapter 46.70 RCW and the Consumer Protection Act, chapter 19.86 RCW.

In May 2001, Palm Harbor, citing the arbitration agreement in its answer, moved to stay the proceeding and compel arbitration under chapter 7.04 RCW. Mr. Mendez, relying partly on *Green Tree Finance Corp. v. Randolph*, 531 U.S. 79, 85, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), opposed the motion, arguing the cost of taking his claim to arbitration would be prohibitive. In support, Mr. Mendez also filed an affidavit asserting the arbitration costs were essentially prohibitive. Mr. Mendez submitted information from the American Arbitration Association (AAA) showing a $2,000 filing fee to initiate a three-person arbitration, not including various other anticipated expenses. Palm Harbor

bypassed Mr. Mendez's prohibitive cost argument, and contended it had been "unable to find any authority whatsoever to suggest that Washington law carves out an exception to RCW 7.04 for people of limited financial means." CP at 57.

On June 7, 2001, the trial court filed a memorandum opinion denying the motion to compel arbitration. The trial court reasoned, "under the facts of this case, to invoke either of the arbitration clauses would deprive the Plaintiff of the opportunity for a hearing on his complaint." CP at 18. The trial court further stated, "the total absence of disclosure of the financial burdens on the plaintiff" resulted in denying Mr. Mendez of an informed choice about waiving his right to a jury trial. CP at 18. On June 22, the parties jointly presented the formal order denying Palm Harbor's motion to stay and compel arbitration.

Palm Harbor appealed. Mr. Mendez cross-appealed the trial court's determination that his statutory claims were ordinarily subject to arbitration.

## ANALYSIS

### A. Arbitrability

While the broad issue is whether the trial court erred in denying Palm Harbor's motion to compel arbitration, here we discuss a threshold issue raised in Mr. Mendez's cross-appeal, whether his statutory claims are subject to arbitration under chapter 7.04 RCW, or 9 U.S.C. § 10, the Federal Arbitration Act (FAA), or both. *See Stein v. Geonerco, Inc.*, 105 Wn. App. 41, 45, 17 P.3d 1266 (2001).

■■■ We review questions of arbitrability de novo. *Id.* (citing *Kamaya Co. v. Am. Prop. Consultants, Ltd.*, 91 Wn. App. 703, 713, 959 P.2d 1140 (1998)). Mr. Mendez bears the burden of showing "his case is unsuitable for arbitration." *Id.* at 48 (citing *Green Tree Fin. Corp.*, 531 U.S. at 91-92; RCW 7.04.010). The parties agree the issue is moot because

Mr. Mendez prevailed below. Nevertheless, we review this matter because the question of arbitrability of statutory claims under chapter 7.04 RCW is a continuing public policy issue worthy of clarification. *See King County v. Boeing Co.*, 18 Wn. App. 595, 606, 570 P.2d 713 (1977) (reasoning moot issue of arbitrability of lease agreement a continuing issue worthy of review).

Mr. Mendez alleged violations of the dealers and manufacturer's licensing act, chapter 46.70 RCW, the contractor's registration act, chapter 18.27 RCW, and the Consumer Protection Act (CPA), chapter 19.86 RCW. In Washington it is well settled that CPA and other statutory claims are subject to arbitration under the FAA. *Garmo v. Dean, Witter, Reynolds, Inc.*, 101 Wn.2d 585, 590, 681 P.2d 253 (1984). But no controlling authority exists concerning arbitration of state statutory claims under chapter 7.04 RCW. Palm Harbor concedes it can identify no conflict between the Washington statute and the FAA in this case. Moreover, logic and common sense dictate if a state statutory claim can be arbitrated under the FAA, the same should be true using the procedural mechanisms of chapter 7.04 RCW.

██ ██ Indeed: "There is a strong public policy in Washington State favoring arbitration of disputes." *Perez v. Mid-Century Ins. Co.*, 85 Wn. App. 760, 765, 934 P.2d 731 (1997) (citing *Munsey v. Walla Walla Coll.*, 80 Wn. App. 92, 94, 906 P.2d 988 (1995)). "The purpose of arbitration is to avoid the formalities, the expense, and the delays of the court system." *Id.* at 765-66 (citing *Barnett v. Hicks*, 119 Wn.2d 151, 160, 829 P.2d 1087 (1992)).

Washington's arbitration statute partly states:

Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this chapter, any controversy which may be the subject of an action existing between them at the time of the agreement to submit, or they may include in a written agreement a provision to settle by arbitration any controversy thereafter arising between them out of or in relation to such agreement. Such agreement shall

be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement. RCW 7.04.010.

A party seeking to enforce an agreement to arbitrate may move to compel arbitration. RCW 7.04.040(1). The trial court then conducts a hearing. *Id.* If the trial court finds "that no substantial issue exists as to the existence or validity of the agreement to arbitrate or the failure to comply therewith," it will order the parties to arbitrate in accordance with the agreement. *Id.*

However, if the trial court finds a substantial issue exists as to the existence or validity of the agreement, "the court shall proceed immediately to the trial of such issue." RCW 7.04.040(2). "If upon such trial the court finds that no written agreement providing for arbitration was made or that there is no default in proceeding thereunder, the motion to compel arbitration shall be denied." *Id.* Either party has the right to demand a jury trial concerning the validity or existence of an arbitration agreement provided certain procedural steps are followed. RCW 7.04.040(3). The trial court may also try the matter together with the contested motion to compel arbitration. RCW 7.04.040(4).

As described above, the "motion to compel arbitration invokes special proceedings under RCW 7.04.040, possibly setting up a mini-trial on the existence or validity of an arbitration agreement, even if there is no action on the merits." *Stein*, 105 Wn. App. at 44 (citing *Herzog v. Foster & Marshall, Inc.*, 56 Wn. App. 437, 441-42, 783 P.2d 1124 (1989)). "The objective of such a motion is to initiate a *separate* action in the forum of arbitration." *Id.*

■ Here, Palm Harbor moved to compel arbitration. Mr. Mendez contested the motion to compel. The trial court conducted a hearing and found the arbitration agreement unenforceable based upon unconscionability, a subject discussed below. Arbitrability is a separate question:

> In determining whether the two parties agreed to arbitrate the particular dispute, we consider four guiding principles: 1) the

duty to arbitrate arises from the contract; 2) a question of arbitrability is a judicial question unless the parties clearly provide otherwise; 3) a court should not reach the underlying merits of the controversy when determining arbitrability; and 4) as a matter of policy, courts favor arbitration of disputes.

*Stein*, 105 Wn. App. at 45-46 (citing *Kamaya*, 91 Wn. App. at 713-14).

■ Concerning the second principle, the arbitration agreement here specified, "any contests to the validity or enforceability" of the arbitration agreement "will be determined by arbitration in accordance with the terms of this Arbitration Provision." CP at 120. Like Washington law, federal law suggests such language may preclude judicial review of arbitrability. *See, e.g., First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942-44, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

Nonetheless, the Washington Legislature has given specific jurisdiction to our superior and district courts for matters falling under chapter 7.04 RCW. RCW 7.04.020. Moreover, the arbitration clause contained in the sales agreement between Mr. Mendez and Palm Harbor states arbitration "shall be commenced and enforced pursuant to RCW 7.04." CP at 119. Given the ambiguity between the arbitration language in the sales contract and the separate arbitration agreement, it cannot be said the parties "clearly" agreed to forgo judicial review of arbitrability even under the *First Options* approach. *First Options*, 514 U.S. at 947; *Stein*, 105 Wn. App. at 45.

■ "The scope of an arbitrator's authority depends on the agreement to arbitrate." *Munsey*, 80 Wn. App. at 95 (citing chapter 7.04 RCW; *Barnett*, 119 Wn.2d at 155). If any doubts or questions arise with respect to the scope of the arbitration agreement, the agreement is construed in favor of arbitration unless the reviewing court is satisfied the agreement cannot be interpreted to cover a particular dispute. *King County*, 18 Wn. App. at 603. Here, the challenged arbitration agreements are quite broad in scope. The contract extends arbitration to "all matters and issues

of fact and/or law." CP at 119. The arbitration agreement provides that all issues arising from "contract, warranty, statutory, property or common law" shall be arbitrable. CP at 120. Interpreted in a manner favorable to arbitration, the agreements cover all of Mr. Mendez's factual and legal claims, both contractual and statutory. *See King County*, 18 Wn. App. at 604-06.

Nevertheless, Mr. Mendez has consistently insisted his statutory claims, particularly his CPA claim, cannot be arbitrated under chapter 7.04 RCW. This appears to be an issue of first impression in this Division.

The Washington Supreme Court held CPA claims arbitrable under the FAA, but did not address arbitrability of CPA claims under the state arbitration statute. *Garmo*, 101 Wn.2d at 590 n.2. Nevertheless, Justice Dolliver noted he would have enforced the challenged arbitration agreement under state law absent federal preemption. *Id.* at 591 (Dolliver, J., concurring). Given this history, Palm Harbor's confidence in *Stein* is misplaced. *Stein* does not resolve this discrete issue; with citation to *Garmo*, 101 Wn.2d at 590, the *Stein* court merely notes in passing that CPA claims "are not exempt from a mandatory arbitration clause." *Stein*, 105 Wn. App. at 49 n.1.

In any event, courts in at least two other states have considered the issue in connection with their own arbitration and consumer protection statutes and have held CPA claims amenable to arbitration under state statute. *Gergel v. High View Homes, LLC*, 996 P.2d 233, 236-37 (Colo. Ct. App. 1999); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340-41 (Ky. Ct. App. 2001); *see also Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 362 (Tenn. Ct. App. 2001) (suggesting CPA claim could be arbitrable under state arbitration statute depending on scope of arbitration agreement).

In light of the foregoing, we hold that CPA and other statutory claims are generally amenable to arbitration under chapter 7.04 RCW. Even so, we must consider unconscionability, our next topic.

## B. Legal and Equitable Unconscionability

The issue is whether the trial court erred by deciding unconscionability served to prevent enforcement of the arbitration agreements.

RCW 7.04.010 provides arbitration agreements are enforceable "save upon such grounds as exist in law or equity for the revocation of any agreement." *See also Barnett*, 119 Wn.2d at 154. Here, the trial court found the arbitration agreement unenforceable because of unconscionability. While both law and equity need discussion, we first discuss the legal analysis.

▋ In this context, the parties approach the contract subject as "goods" under Article 2 of the Uniform Commercial Code (UCC) and thus a legal matter. RCW 62A.2-105(1). Under Article 2 the court may refuse to enforce a contract or affected contract provision if it finds the contract provision was unconscionable at the time it was made as a matter of law. RCW 62A.2-302(1). In making this determination, the trial court considers the "commercial setting, purpose and effect" surrounding the contested contract or clause. RCW 62A.2-302(2). As the drafters of the UCC explained:

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. Campbell Soup Co. v. Wentz, 172 F.2d 80, 3d Cir. 1948) and not of disturbance of allocation of risks because of superior bargaining power.

RCWA 62A.2-302 (U.C.C. cmt. at 121).

▋ In this legal context: "The existence of an unconscionable bargain is a question of law for the courts." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995) (citing *Mieske v. Bartell Co.*, 92 Wn.2d 40, 50, 593 P.2d 1308

(1979)). Courts generally recognize two categories of unconscionability, substantive and procedural. *Id.* Substantive unconscionability occurs when contract terms are one-sided or overly harsh. *Id.* " 'Shocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* Procedural unconscionability appears when an irregularity taints the process of contraction formation. *Id.*

> Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including " '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print . . . .' "

*Nelson*, 127 Wn.2d at 131 (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.D.C. 1965))).

At oral argument, Palm Harbor conceded we are dealing with adhesion contracts. *See Eelbode v. Chec Med. Ctrs., Inc.*, 97 Wn. App. 462, 472, 984 P.2d 436 (1999). Generally, an adhesion contract is prepared on standard printed form, is prepared by one party and submitted to the other on a " 'take it or leave it' basis," and there is " 'no true equality of bargaining power' between the parties." *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993) (quoting *Standard Oil Co. v. Perkins*, 347 F.2d 379, 383 n.5 (9th Cir. 1965)).

However, adhesion contracts are not necessarily unconscionable. Rather, under general principles of contract interpretation, the reviewing court construes ambiguities in the agreements against the drafter. *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984); *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 (1966). While the contracts bind the parties more or less equally despite the obvious differences in bargaining power, Mr. Mendez additionally avers Palm Harbor misled

him to believe he had access to a cheaper method of dispute resolution in arbitration rather than resorting to court action.

According to Mr. Mendez's undisputed affidavit, he signed the arbitration agreements because Palm Harbor's sales representatives told him arbitration would be cheaper and more convenient. Yet, this alone does not appear to support procedural unconscionability under current Washington contract law. *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819, 833-34, 970 P.2d 803 (1999) (noting lack of evidence that plaintiff was unwilling to enter challenged agreement), *aff'd*, 140 Wn.2d 568, 998 P.2d 305 (2000). Apparently, the trial court was persuaded the absence of arbitration cost information in the contracts was critical. Under the FAA, the lack of cost information in an arbitration clause alone does not render the provision unenforceable. *Green Tree Fin. Corp.*, 531 U.S. at 89-91.

In any event, the trial court clearly approached this dispute both in law and in equity. Therefore, it appropriately considered additional factors, particularly the prohibitive entry costs, before deciding a trial rather than arbitration was appropriate. Equity includes the power to prevent the enforcement of a legal right when to do so would be inequitable under the circumstances. *Thisius v. Sealander*, 26 Wn. 2d 810, 818, 175 P.2d 619 (1946). Under the proper "conditions and circumstances" warranting equity, "equity will assume jurisdiction for all purposes and give such relief as may be required." *Income Props. Inv. Corp. v. Trefethen*, 155 Wash. 493, 506, 284 P. 782 (1930). The goal of equity is to do substantial justice to the contracting parties. *Shoemaker v. Shaug*, 5 Wn. App. 700, 704, 490 P.2d 439 (1971). Mr. Mendez sought and received equity below based mainly upon the prohibitive entry costs of arbitration compared to the entry costs of trial.

We review the application of equity for an abuse of discretion. *Willener v. Sweeting*, 107 Wn.2d 388, 397, 730 P.2d 45 (1986); *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 848, 999 P.2d 54 (2000). Moreover, we may affirm a trial

court on any theory supported by the record and the legal authorities even if the trial court did not consider or mainly consider such grounds. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989); *Wendle v. Farrow*, 102 Wn.2d 380, 382, 686 P.2d 480 (1984). Mr. Mendez, relying on *Green Tree*, argued and submitted evidence below in support of a prohibitive cost defense to arbitration. Because, to the time of this opinion no Washington court has directly considered a prohibitive cost defense, it is not surprising the trial court did not do more than make the record it did.

 Regarding prohibitive cost, the *Green Tree* court noted high arbitration costs could deter some litigants from pursuing their claims. *Green Tree*, 531 U.S. at 90. Critical is whether the arbitral forum will afford the plaintiff an opportunity to vindicate his or her statutory claim. *Id.* at 89-90. "It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her . . . statutory rights in the arbitral forum." *Id.* at 90.

*Green Tree* highlights the crux of Mr. Mendez's "access to justice" argument; the cost of arbitration is so high relative to his financial condition and the small size of his primary claim ($1,500) that forcing AAA arbitration with three arbitrators effectively precludes him from pursuing his claims against Palm Harbor. The circumstances here represent the antithesis of access to justice. The filing cost of $2,000 is relatively certain under the AAA schedules produced by Mr. Mendez, and Mr. Mendez reasonably anticipates thousands more to litigate his primary claim. As observed in *Perkins Coie v. Williams*, 84 Wn. App. 733, 737, 929 P.2d 1215 (1997), a primary goal of arbitrating small sums is to provide increased access to justice. While *Perkins Coie* is a mandatory arbitration case under chapter 7.06 RCW, the principle remains just as applicable under our facts.

Palm Harbor candidly concedes Mr. Mendez's austere financial circumstances, but asserts the record does not support the alleged high arbitration costs. First, Palm Harbor argues Mr. Mendez needs to incur the costs before

they could be sufficiently verified. Second, it argues the trial court disregarded the comparative costs of a completed litigation. The *Green Tree* court decided where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. The litigant in *Green Tree* did not prevail because she failed to produce sufficient evidence of the arbitration costs she was likely to incur. *Id.* at 90-91.

Like Mr. Mendez, the litigant in *Green Tree* provided information from the AAA. The *Green Tree* court noted no evidence existed showing the AAA would actually conduct the arbitration, "or that, if it did, she would be charged the filing fee or arbitrator's fee that she identified." *Id.* at 90 n.6; *see also In re FirstMerit Bank, N.A.*, 44 Tex. Sup. Ct. J. 900, 52 S.W.3d 749, 757 (2001). The *Green Tree* court reasoned her claim of prohibitive costs was "too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91.

We are not bound by the factual determinations in *Green Tree*. Further, the *Green Tree* court did not discuss "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence." *Green Tree*, 531 U.S. at 92. Thus, regarding burden shifting, once the plaintiff has shown the likelihood of incurring prohibitive arbitration costs, the "onus is on the party seeking arbitration to provide contrary evidence." *Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F. Supp. 2d 840, 846 (N.D. Ill. 2001) (citing *Green Tree*, 531 U.S. at 92); *Camacho v. Holiday Homes, Inc.*, 167 F. Supp. 2d 892, 895 (W.D. Va. 2001). Assuming Mr. Mendez made the proper showing to the trial court, Palm Harbor did not carry its "onus" to provide contrary evidence.

Significantly, *Green Tree* allows a "prohibitive cost" defense to arbitration. Some courts applying *Green Tree* have discussed the defense in terms of unconscionability. *See Ting v. AT&T*, 182 F. Supp. 2d 902, 933 (N.D. Cal. 2002)

(substantive unconscionability); *In re FirstMerit Bank*, 52 S.W.3d at 756 (unconscionability). By contrast, at least one court viewed the defense as one standing alone and apart from the unconscionability analysis. *Camacho*, 167 F. Supp. 2d at 896 n.2. A number of quite recent cases discussing the *Green Tree* prohibitive cost defense illustrate how this new defense applies to contractual arbitration clauses like the one involving Mr. Mendez.

In a mobile home case somewhat similar to this one, the federal district court took note of the AAA's $2,000 filing fee, the estimated cost of arbitrator compensation (ranging from $600 to $4,100), and the consumer's hardscrabble situation (part-time waitress with weekly income of $300, three children to support, and considerable student loan debt). *Camacho*, 167 F. Supp. 2d at 894-95, 897. The court reasoned the consumer had "adequately demonstrated that the arbitral forum provided for in the contact is financially inaccessible to her, and, therefore fails to ensure that she can vindicate her statutory rights." *Id.* at 896. The *Camacho* court indicated it would entertain a motion for reconsideration if the mobile home vendor agreed to bear the costs of arbitration on the consumer's behalf. *Id.* at 897.

In another recent case involving a consumer loan dispute, the federal district court noted the high filing fee (up to $4,000), that the arbitrator's fees which "range from $750 to $5,000 per day," and that "travel expenses, rental of a hearing room, and other costs are borne equally by the parties, absent some agreement between the parties." *Phillips*, 179 F. Supp. 2d at 846. And the court further noted that the equity lender supporting arbitration did not dispute that the consumer could not "afford the costs associated with arbitration." *Id.* The *Phillips* court rejected the lender's speculative assertions argument, reasoning a reasonable, good faith estimation effort was sufficient without evidence of billings. *Id.* at 847. There also, the *Phillips* court indicated it would reconsider if the lender would front the consumer's arbitration costs. *Id.*

Very recently, a federal district court in California held AT&T's AAA arbitration provisions unconscionable because they placed prohibitive costs on complaining customers attempting to vindicate their claims. *Ting*, 182 F. Supp. 2d at 934-35. The *Ting* court noted the average daily rate of compensation for an arbitrator in Northern California was $1,899. *Id.* at 934. Considering the average rate of compensation and various filing fees, administrative fees, and deposits, the *Ting* court determined that "a class member's potential cost before arbitration begins would be $5800." *Id.* "Filing that suit in a court, which she supports with her taxes, would generally cost her under $200 in California." *Id.* "Having to advance such substantial sums will deter many litigants from proceeding." *Id.* (citing *Phillips*, 179 F. Supp. 2d at 846-47).

Given the light shed by these recent authorities, we conclude Mr. Mendez has met his burden to show prohibitive costs. Similar to the facts in *Phillips*, Palm Harbor does not dispute Mr. Mendez could not "afford the costs associated with arbitration." *Phillips*, 179 F. Supp. 2d at 846.

Washington's policy favoring arbitration is grounded on the proposition that arbitration allows litigants to avoid the formalities, expense, and delays inherent in the court system. *Perez v. Mid-Century Ins. Co.*, 85 Wn. App. 760, 765-66, 934 P.2d 731 (1997). This policy is defeated when an arbitration agreement triggers costs effectively depriving a plaintiff of limited pecuniary means of a forum for vindicating claims. *Green Tree*, 531 U.S. at 90; *see also* Richard M. Alderman, *Pre-Dispute Mandatory Arbitration in Consumer Contracts: A Call for Reform*, 38 Hous. L. Rev. 1237 (2001); Shelly Smith, Comment, *Mandatory Arbitration Clauses in Consumer Contracts: Consumer Protection and the Circumvention of the Judicial System*, 50 DePaul L. Rev. 1191, 1220 (2001) (contending large corporations use arbitration clauses as a shield to prevent consumers from accessing the judicial system to enforce their statutory rights).

Here, it is reasonably sure by prima facie proof that Mr. Mendez would have been required to spend up front well over $2,000 to try to vindicate his rights under a contract to buy a $12,000 item in order to resolve a potential $1,500 dispute. Avoiding the public court system to save time and money is a laudable societal goal. But avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice.

In sum, for the first time in Washington, we recognize a variation of the *Green Tree* prohibitive cost defense to the enforcement of an arbitration agreement under chapter 7.04 RCW. Under this defense, an arbitration agreement may be stricken when the party opposing arbitration reasonably shows in law or equity that prohibitive costs are likely to render the arbitral forum inaccessible.

Applying the defense here, did Mr. Mendez sufficiently show the reasonably expected arbitration costs would be prohibitive? Mr. Mendez filed with the trial court an affidavit describing his circumstances and including the information obtained from the AAA's Seattle office. The trial court was persuaded Mr. Mendez reasonably proved the costs associated with the arbitration clauses would deprive him "of the opportunity for a hearing on his complaint." CP at 18. Palm Harbor did not meet its onus to provide contrary evidence. As discussed, Palm Harbor does not dispute Mr. Mendez's desperate pecuniary status. It solely challenges Mr. Mendez's evidence of arbitration costs on the basis that he should provide more in the form of invoices from the AAA. Clearly, it is unreasonable to require Mr. Mendez to actually incur the costs of arbitration in order to meet his burden of proof. *See Phillips*, 179 F. Supp. 2d at 847; *Camacho*, 167 F. Supp. 2d at 897 n.4.

The dispute submitted to the trial court called mainly for an exercise of equitable discretion. An abuse of discretion occurs when the trial court's decision is based on untenable grounds or untenable reasons. *Hayes v. Wieber Enters., Inc.*, 105 Wn. App. 611, 615, 20 P.3d 496 (2001). Unlike in *Green Tree*, the arbitration agreements here specifically come under chapter 7.04 RCW, a state law specifically providing for legal or equitable intervention when questions of validity, enforcement, or revocability arise. RCW 7.04.010. As already discussed, the critical facts are supported by at least prima facie evidence, and not overcome by other evidence. The trial court recited and inferentially found (1) it would take a minimum of $2,000 to commence the arbitration process, (2) Mr. Mendez is poverty-stricken without practical means to arbitrate as required by the agreements, and (3) Mr. Mendez agreed to arbitrate operating under the "faulty premise" that arbitration would facilitate access to dispute resolution by being "less burdensome and expensive to arbitrate than resort to the judicial process." CP at 18.

Significantly, the reasoning in the memorandum opinion is rooted in the disadvantageous circumstances it found, including the "absence of disclosure" in this admitted adhesion contract regarding who would be responsible to pay the financial burden of commencing a three-person AAA arbitration. The trial court noted the disparate commercial sophistication and unequal financial footing between the parties. Moreover, Palm Harbor does not dispute Mr. Mendez's affidavit claim that one of its sales representatives told him arbitration would be cheaper and more convenient. Avoiding the access problem, Palm Harbor's response merely is the total costs of arbitration need to be compared to the total costs of a jury trial. In any event, given this record, we conclude the trial court articulated tenable reasons and grounds for exercising its equitable discretion.

By contrast, in a purely legal context, the *Green Tree* defense turned solely on a mixed question of law and

fact—whether the costs of entering the arbitral forum are so high as to effectively deny the plaintiff of an opportunity to vindicate his or her claim. *Green Tree*, 531 U.S. at 91-92; *Ting*, 182 F. Supp. 2d at 933-34; *Phillips*, 179 F. Supp. 2d at 846; *Camacho*, 167 F. Supp. 2d at 896. The defense we adopt requires the trial judge to consider the particular facts bearing upon equitable unconscionability as well as legal unconscionability. According to the AAA filing fee schedule, Mr. Mendez alone would be responsible for paying a $2,000 filing fee at the time of filing for arbitration before a multi-arbitrator panel plus reasonably anticipated expenses. Such costs pose an insurmountable barrier.

Recent cases illustrate the seriousness of Mr. Mendez's problem. *See Green Tree*, 531 U.S. at 90 n.6 (noting average AAA arbitrator's fee in 1996 of approximately $700 per day); *Ting*, 182 F. Supp. 2d at 934 (noting $1,899 average daily arbitrator compensation in Northern California); *Phillips*, 179 F. Supp. 2d at 846 (ranging from $750 to $5,000, with an average of $1,800 per day for a single arbitrator in the Chicago area); *Camacho*, 167 F. Supp. 2d at 897 (ranging $600 for one-half the cost of cheapest available arbitrator for 12 hours to $4,100 for one-half the cost of most expensive arbitrator for 24 hours).

Moreover, the above-cited examples relate to a single arbitrator. Here, because the arbitration agreement requires three arbitrators, it is reasonable to anticipate even higher costs.

Although Mr. Mendez has not provided evidence relating to the average cost of an arbitrator in Central Washington, precise calculation would not be possible "without actually going through arbitration and receiving a final bill." *Phillips*, 179 F. Supp. 2d at 847; *see also Camacho*, 167 F. Supp. 2d at 897 n.4 ("It is impossible to establish the exact amount Camacho would have to pay because the arbitrator sets the amount after the arbitration has been initiated."). In any event, the $2,000 filing fee alone is many times higher than our superior court filing fee of $110. *Ting*, 182 F. Supp. 2d at 934. Accordingly, substantial evidence exists

in the record to support the trial court's finding that Mr. Mendez's minimum cost for entering arbitration to be $2,000.

Palm Harbor contends Mr. Mendez failed to provide evidence allowing the reviewing court to compare expected arbitration costs to expected litigation costs. *Boyd v. Town of Hayneville*, 144 F. Supp. 2d 1272, 1280 n.5 (M.D. Ala. 2001). But, the plaintiff in *Boyd* presented no evidence at all "relating to the comparative expense of litigating his claims." *Id.* Here, in contrast to *Boyd*, evidence exists in the record showing the filing fee for arbitration is nearly 20 times higher than the filing fee for a superior court action. *See Ting*, 182 F. Supp. 2d at 934 (comparing $5,800 plaintiffs would have to pay before arbitration begins to $200 required to file a court action in California); *Phillips*, 179 F. Supp. 2d at 846 (noting cost of pursuing arbitration at least 12 times greater than filing a case in federal court); *Camacho*, 167 F. Supp. 2d at 897 (reasoning that where plaintiff could not even afford $150 court filing fee she could not possibly afford to enter the arbitral forum). Moreover, even the *Boyd* court recognized that high costs could render arbitration inaccessible to a statutory claimant. *Boyd*, 144 F. Supp. 2d at 1280.

Palm Harbor next contends Mr. Mendez could avoid AAA arbitration costs by way of hardship provisions it argues are contained in the AAA rules. In dictum, the Texas Supreme Court recently noted the existence of such rules. *See FirstMerit Bank*, 52 S.W.3d at 757. But other courts have found such potential waivers unpersuasive because the AAA rarely grants them and they are generally unavailable until after the complaining party has already expended considerable funds in arbitration. *Ting*, 182 F. Supp. 2d at 934; *Camacho*, 167 F. Supp. 2d at 897. Palm Harbor's argument on this point is merely speculative.

Palm Harbor next speculatively suggests the possibility of cost shifting should defeat Mr. Mendez's prohibitive cost argument. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 362-63 (Tenn. Ct. App. 2001); *Zumpano v. Omnipoint*

*Communications, Inc.*, 84 Fair Empl. Prac. Cas. (BNA) 1592, 143 Lab. Cas. P59, 199, 2001 U.S. Dist. LEXIS 376, 2001 WL 43781 (E.D. Pa. 2001); *Goodman v. ESPE Am., Inc.*, 84 Fair Empl. Prac. Cas. (BNA) 1629, 2001 U.S. Dist. LEXIS 433, 2001 WL 64749 (E.D. Pa. 2001).

*Zumpano* and *Goodman* are distinguishable. First, the court in both cases found it significant that the aggrieved employees had substantial incomes ($80,000 to $120,000) enabling them to pay anticipated arbitration costs. *Zumpano*, 2001 U.S. Dist. LEXIS 376, at *17, 2001 WL 43781, at *6-8; *Goodman*, 2001 U.S. Dist. LEXIS 433, at *13 n.4, 2001 WL 64749, at *4 n.4. Second, in *Zumpano* the employer undercut the employee's hardship theory by offering to pay the costs of arbitration on the employee's behalf. *Zumpano*, 2001 U.S. Dist. LEXIS 376, at *30, 2001 WL 43781, at *11. Here, Palm Harbor concedes Mr. Mendez has limited means, and Palm Harbor has not offered to pay arbitration costs.

With respect to *Pyburn*, we note other courts have persuasively rejected the fee shifting argument. *Phillips*, 179 F. Supp. 2d at 846; *Camacho*, 167 F. Supp. 2d at 897. The *Camacho* court reasoned that potential fee shifting did not matter because the plaintiff could not afford the $2,000 AAA filing fee required to vindicate her claim. *Id.*

Overall, we reject Palm Harbor's fee shifting argument. Taken to its logical end, the argument will always render the cost of arbitration irrelevant whenever fee shifting is a possibility, even in the case of an indigent plaintiff. The argument ignores the primary public policy issue at stake: high arbitration costs precluding the consumer's access to a forum where he or she can vindicate his or her claim. *See Green Tree*, 531 U.S. at 90; *Ting*, 182 F. Supp. 2d at 933-34; *Phillips*, 179 F. Supp. 2d at 846; *Camacho*, 167 F. Supp. 2d at 897. If the up-front costs of arbitration have the practical effect of deterring a consumer's claim, the arbitration agreement should not be enforced. *Ting*, 182 F. Supp. 2d at 934-35; *Phillips*, 179 F. Supp. 2d at 846-47; *Camacho*, 167 F.

Supp. 2d at 897. The reasoning in *Phillips*, *Camacho*, and *Ting* is persuasive.

The next inquiry is whether the initial costs of arbitration in this case are "prohibitive," in other words; the plaintiff cannot afford to pay them. *See Phillips*, 179 F. Supp. 2d at 847 (noting consumer "would have to expend thousands of dollars she does not have in order to pursue her claim"); *Camacho*, 167 F. Supp. 2d at 897 (noting consumer unable to pay $150 court filing fee much less arbitration costs). At oral argument Palm Harbor conceded even a $500 filing fee would likely be a prohibitive cost for Mr. Mendez. The concession is consistent with Palm Harbor's arguments. Thus, the trial court's finding as to Mr. Mendez's inability to pay the arbitration filing fee is unchallenged and a verity on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Because we have already reasoned through the prohibitive nature of the costs in discussing the issues thus far, and further repetition is unnecessary, we conclude Mr. Mendez's costs are reasonably shown to be prohibitive.

Once prohibitive costs are established, the opposing party must present contrary offsetting evidence to enforce arbitration. *Phillips*, 179 F. Supp. 2d at 846. As noted above, Palm Harbor has not disputed Mr. Mendez's claim of being unable to afford the $2,000 filing fee. *See Phillips*, 179 F. Supp. 2d at 846; *Camacho*, 167 F. Supp. 2d at 897. Further, Palm Harbor has not offered to defray the cost of arbitration pending the outcome. *See Phillips*, 179 F. Supp. 2d at 846; *Camacho*, 167 F. Supp. 2d at 897 n.3; *Zumpano*, 2001 U.S. Dist. LEXIS 376, at *30, 2001 WL 43781, at *11. Nor has Palm Harbor taken steps "to limit the plaintiffs' costs of arbitration in a meaningful fashion." *Ting*, 182 F. Supp. 2d at 934-35. Reviewing courts are more willing to enforce arbitration clauses in adhesion contracts where the party asserting arbitration offers to defray or limit the costs borne by the consumer. *See Zumpano*, 2001 U.S. Dist. LEXIS 376, at *30, 2001 WL 43781, at *11 (noting employer's willingness to pay for employee's arbitration costs).

In sum, we conclude Mr. Mendez has made a sufficient showing that the anticipated filing and administrative costs of AAA arbitration would be prohibitively high. The costs have the practical effect of preventing Mr. Mendez from pursuing his statutory claims. Palm Harbor provided no contrary evidence, nor did it argue below that the costs of arbitration would not be prohibitive; it merely contended that it could find no authority for a financial hardship exception to arbitration under chapter 7.04 RCW. Our holding resolves this concern. Accordingly, the trial court did not err in denying the motion to compel arbitration.

## C. Attorney Fees, Sanctions and Unpublished Opinions

■ Palm Harbor's request for fees pursuant to the contract and RAP 18.1 is denied because it has not prevailed. Because the contract at issue contains an attorney fee provision, Mr. Mendez is entitled to fees as the prevailing party on appeal. RAP 18.1(d); *Chatterton v. Bus. Valuation Research, Inc.*, 90 Wn. App. 150, 157, 951 P.2d 353 (1998). Ultimately, Mr. Mendez may also be eligible for fees under the CPA. RCW 19.86.090. Because the underlying contract and statutory issues have yet to be resolved, an award of fees related to this appeal is premature. *Mich. Nat'l Bank v. Olson*, 44 Wn. App. 898, 906, 723 P.2d 438 (1986). The trial court can consider the fees and costs incurred in this appeal in calculating a final award. RAP 18.1(i).

■ Palm Harbor requests sanctions against Mr. Mendez under RAP 18.9 for filing a frivolous cross-appeal. The cross-appeal, while technically moot, raised significant public policy issues in need of clarification with respect to arbitrability of statutory claims under chapter 7.04 RCW. Accordingly, sanctions are not appropriate.

We note for future guidance and with disapproval that Palm Harbor relies heavily on recent out-of-state unpublished opinions, for example: *McCaskill v. SCI Management Corp.*, 2000 U.S. Dist. LEXIS 10317, 2000 WL 875396 (N.D.

Ill. 2000); *Hale v. First Bank, N.A.*, 2001 WL 687371 (S.D.N.Y. 2001); *Dabney v. Option One Mortgage Corp.*, 2001 U.S. Dist. LEXIS 4949, 2001 WL 410543 (E.D. Pa. 2001). Moreover, we note *Zumpano* and *Goodman*, while published in loose leaf format by the Bureau of National Affairs, were not deemed worthy of publication in the official reports. And, while a recent Alabama opinion Palm Harbor discusses at length has been tentatively slated for publication in a regional reporter for nearly a year, its eventual publication is doubtful because it has already been overruled. *Cavalier Mfg., Inc. v. Jackson*, 2001 Ala. LEXIS 115, 2001 WL 367600 (2001) (not yet released for publication), *overruled by Thicklin v. Fantasy Mobile Homes, Inc.*, 2002 Ala. LEXIS 11, 2002 WL 27925 (2002) (not yet released for publication).

Generally, "[u]npublished opinions have no precedential value and should not be cited or relied upon in any manner." *Skamania County v. Woodall*, 104 Wn. App. 525, 536 n.11, 16 P.3d 701, *review denied*, 144 Wn.2d 1021 (2001) (citing RAP 10.4(h)). Division One of this Court imposed $500 in sanctions against counsel who cited and discussed at length an unpublished opinion of that court. *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wn. App. 542, 548-49, 13 P.3d 240 (2000), *review denied*, 143 Wn.2d 1024 (2001).

█ Although we generally disapprove of using unpublished authorities, we note also the unpublished opinions Palm Harbor relies upon are not from within this state. Accordingly, we will not impose sanctions in this case because we believe the rules require clarification. RAP 10.4(h) limits its citation prohibition to unpublished opinions of "the Court of Appeals." "Unpublished opinions of the Court of Appeals are those opinions not published in the Washington Appellate Reports." RAP 10.4(h). Thus, RAP 10.4(h) does not expressly prohibit citation to unpublished opinions of other jurisdictions.

For clarification, RAP 10.4(g) states a party "should" cite to both state and national reporters for state cases and "should" cite to the federal reporters for federal cases other

than the United States Supreme Court. For the United States Supreme Court, the party "should" cite to "the United States Reports, the United States Supreme Court Reports Lawyers' Edition, and the Supreme Court Reporter." RAP 10.4(g).

Reading RAP 10.4(g) and (h) in relation to each other, it is clear citation to unpublished opinions of this court is forbidden and citation to unpublished opinions of other jurisdictions is also inappropriate. "The reliance upon unpublished opinions is a dubious practice at best, and we decline the invitation under the instant circumstances." *State ex rel. Lonctot v. Sparkman & McLean Co.*, 16 Wn. App. 402, 406, 556 P.2d 946 (1976).

## CONCLUSION

The trial court did not err when reasoning statutory claims are generally arbitrable under chapter 7.04 RCW or when denying Palm Harbor's motion to compel arbitration. Attorney fees will abide trial of Mr. Mendez's complaint.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.