[No. 51452-1-I. Division One. September 20, 2004.]

KRUGER CLINIC ORTHOPAEDICS, L.L.C., *Respondent*, v. REGENCE BLUESHIELD, *Appellant*.

358

*Stephania C. Denton* and *David D. Swartling* (of *Mills Meyers Swartling*), for appellant.

*Thomas J. Keane* (of *Rodihan & Keane*), for respondent.

Cox, C.J. — Regence BlueShield appeals the order denying its motion to compel Kruger Clinic Orthopaedics to arbitrate its breach of contract claims that arise out of an April 1995 agreement between the parties. The agreement contains an arbitration clause that Kruger contends is

unenforceable. We hold that the Federal Arbitration Act (FAA)[1] controls, and state law is preempted to the extent it conflicts with that act. But the provisions of the arbitration agreement that state "all determinations of [Regence] shall be afforded deference" and "the standards to be applied by the arbitrator shall be whether [Regence] has acted arbitrarily and capriciously" are substantively unconscionable. We strike those provisions and remand for entry of an order staying this action pending arbitration without these unenforceable clauses.

Regence is a "health care service contractor"[2] that provides health insurance to patients throughout the nation through various subscriber agreements. Regence contracts with various providers of medical services to provide medical care to insured patients. In exchange, the providers are compensated under the terms of participating provider agreements.

Kruger is a limited liability company that is comprised of orthopaedic surgeons. Kruger provides orthopaedic medical care through Regence to insured patients under the terms of a participating provider agreement that the parties executed in April 1995. The agreement contains a dispute resolution procedure that includes an agreement to arbitrate.

Disputes arose between the parties over the terms of compensation for services Kruger performed for patients. Kruger claims that Regence owes it over $10,000 in reimbursements for devices implanted in patients during surgery. In addition, Kruger claims Regence breached an agreement to equalize reimbursement payments to Kruger with those of other service providers.

---

[1] 9 U.S.C. §§ 1-16.

[2] RCW 48.44.010(3) provides:

(3) "Health care service contractor" means any corporation, cooperative group, or association, which is sponsored by or otherwise intimately connected with a provider or group of providers, who or which not otherwise being engaged in the insurance business, accepts prepayment for health care services from or for the benefit of persons or groups of persons as consideration for providing such persons with any health care services.

The parties proceeded through the first phases of the dispute resolution procedure specified in their agreement. But Kruger did not proceed to the next step—a written demand for arbitration. Instead, Kruger sued Regence, alleging breach of contract. Regence moved to compel arbitration in accordance with the terms of the agreement to arbitrate. The trial court denied Regence's motion.

Regence appeals.

## AGREEMENT TO ARBITRATE

### Controlling Statute

Regence first argues that the FAA controls the arbitrability of the parties' disputes. We agree.

■ Section 2 of the FAA states:

> A written provision in any maritime transaction or *a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,* or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*[3]

The United States Supreme Court has construed "involving commerce" as expansively as possible, as broadly as the words "affecting commerce."[4] The scope of the FAA's provisions concerning the validity of arbitration clauses reaches to the farthest limits of Congress' power under the Commerce Clause.[5]

---

[3] 9 U.S.C. § 2 (emphasis added).

[4] *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

[5] *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998) (Cox, J., concurring).

 The FAA establishes a strong federal policy in favor of arbitration and creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct."[6] Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[7] The United States Supreme Court stated there is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[8] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."[9] Questions of arbitrability are reviewed de novo.[10]

██ ██ Here, the arbitration provision of the dispute resolution mechanism in the provider agreement states:

> In the event that any problem or dispute concerning the terms of the Agreement is not satisfactorily resolved, the COMPANY and the PROVIDER agree to arbitrate such problem or dispute. Such arbitration may be initiated by either party by making a written demand for arbitration on the other party. Within twenty days of that demand, the COMPANY and the PRO-VIDER shall confer to select a mutually agreeable arbitration [sic]. The arbitrator shall hold a hearing and decide the matter within thirty days thereafter. The arbitration shall be conducted pursuant to the rules of the American Arbitration Association then in effect unless agreed otherwise by the parties. The results of the arbitration shall be binding on both parties, and the parties agree that all determinations of the COMPANY shall be afforded deference, and the standards to be applied by the arbitrator shall be whether the COMPANY has

---

[6] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir. 1984).

[7] 9 U.S.C. § 2.

[8] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

[9] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

[10] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 946-47, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

acted arbitrarily and capriciously with the burden of proof being on the PROVIDER. Neither party subsequently shall commence an action to litigate the dispute. The parties shall share equally the fee of the arbitrator.

This agreement to arbitrate is within a provider agreement that "involves commerce" within the meaning of the FAA. The provider agreement requires Kruger "to perform services in accordance with the applicable Subscriber agreement." Groups that have Subscriber agreements include federal government programs and patients from other states who have contracts with other BlueCross or BlueShield plans that allow them access to Regence providers under the BlueCard program.

Because the provider agreement contains an agreement to arbitrate and involves commerce, the FAA controls.[11]

*The McCarran-Ferguson Act*

Regence argues that the FAA controls notwithstanding the provisions of the McCarran-Ferguson Act,[12] which leaves to the states the regulation of insurance. We agree.

---

[11] Even if the FAA did not control, the state arbitration statute would support arbitration because of parallel language and similar policies. The Washington Arbitration Act, RCW 7.04.010, provides in part:

Two or more parties . . . may include in a written agreement a provision to settle by arbitration any controversy thereafter arising between them out of or in relation to such agreement. Such agreement shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.

*See Perez v. Mid-Century Ins. Co.*, 85 Wn. App. 760, 765, 934 P.2d 731 (1997) ("There is a strong public policy in Washington state favoring arbitration of disputes."); *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 77 Wn. App. 137, 146, 890 P.2d 1071 (1995) ("Where an agreement provides for a method of resolving disputes between the parties, that method must be pursued before either party can resort to the courts for relief.").

[12] The McCarran-Ferguson Act, 15 U.S.C. § 1012, reads in relevant part:

**(a) State regulation**

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

■ Both the provider agreement that the parties signed and a controlling statute provide that Regence is a "health care service contractor." RCW 48.44.010(3) provides:

> "Health care service contractor" means any corporation, cooperative group, or association, which is sponsored by or otherwise intimately connected with a provider or group of providers, who or which not otherwise being engaged in the insurance business, accepts prepayment for health care services from or for the benefit of persons or groups of persons as consideration for providing such persons with any health care services.

Moreover, RCW 48.44.020 provides:

> (1) Any *health care service contractor* may enter into contracts with or for the benefit of persons or groups of persons which require prepayment for health care services by or for such persons in consideration of such health care service contractor providing one or more health care services to such persons and such activity *shall not be subject to the laws relating to insurance* if the health care services are rendered by the health care service contractor or by a participating provider.[13]

Here, Regence entered into a provider agreement for the benefit of insured patients with Kruger to provide medical services. This arrangement falls squarely within the express terms of the state statute exempting it from insurance laws.

■ *Group Life & Health Insurance Co. v. Royal Drug Co.*[14] provides further support for the conclusion that the provider agreement does not impact the "business of insurance" within the meaning of the McCarran-Ferguson Act. The United States Supreme Court in *Royal Drug* examined whether a contract to provide drugs involved the "business of insurance." The Court stated:

---

**(b) Federal regulation**

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

[13] (Emphasis added.)

[14] 440 U.S. 205, 214, 99 S. Ct. 1067, 59 L. Ed. 2d 261 (1979).

The Pharmacy Agreements thus do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield. By agreeing with pharmacies on the maximum prices it will pay for drugs, Blue Shield effectively reduces the total amount it must pay to its policyholders. The Agreements thus enable Blue Shield to minimize costs and maximize profits. Such costsavings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the "business of insurance."[15]

Here, the provision of orthopaedic services is analogous to the contract to provide drugs. Kruger's contract to provide orthopaedic services in exchange for compensation does not involve the spreading of risk or underwriting. Thus, the agreement does not impact the "business of insurance."

For these reasons, the McCarran-Ferguson Act does not apply. The FAA controls.

### *WAC 284-43-322*

Regence next argues that the agreement to arbitrate in the provider agreement before us is not rendered unenforceable by WAC 284-43-322. We agree and hold that this state regulation is not a bar to arbitration of the disputes between the parties.

WAC 284-43-322 provides that a "fair review" for consideration of complaints by health care providers is one that does not exclude judicial remedies. Specifically, the regulation states:

Except as otherwise required by a specific federal or state statute or regulation governing dispute resolution, no process for the resolution of disputes arising out of a participating provider or facility contract shall be considered fair under RCW 48.43.055 unless the process meets all the provisions of this section.

---

[15] *Royal Drug*, 440 U.S. at 214.

. . . .

(4) Carriers *may not require alternative dispute resolution to the exclusion of judicial remedies*; however, carriers may require alternative dispute resolution prior to judicial remedies.[16]

RCW 48.43.055, a statute on which this regulation purports to be based, provides:

Each health carrier as defined under RCW 48.43.005 shall file with the commissioner its procedures for review and adjudication of complaints initiated by health care providers. *Procedures filed under this section shall provide a fair review for consideration of complaints.* Every health carrier shall provide reasonable means allowing any health care provider aggrieved by actions of the health carrier to be heard after submitting a written request for review. . . .[17]

Kruger took the position below, as it does on appeal, that the first clause of WAC 284-43-322(4) bars the arbitration provisions in the provider agreement. Specifically, Kruger points to the following language of that provision:

The results of the arbitration shall be binding on both parties . . . . Neither party shall subsequently commence an action to litigate the dispute.

According to Kruger, this language excludes judicial remedies and is therefore barred by the state statute.

█ We need not decide whether this reading of the arbitration provision is correct. Assuming without deciding that this provision should be fairly read as an exclusion of judicial remedies rather than a limitation of judicial remedies to those specified in the FAA,[18] the regulation cannot bar arbitration in this case. That is because the FAA preempts contrary state laws that apply only to arbitration agreements.

---

[16] (Emphasis added.)

[17] (Emphasis added.)

[18] Within one year after arbitration a party may move to confirm, vacate, modify, or correct an award. *See* 9 U.S.C. §§ 9-11.

The United States Supreme Court has made quite clear that courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.[19] According to that Court, by enacting § 2 of the FAA, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed " 'upon the same footing as other contracts.' "[20]

▄ Application of that principle here leads us to conclude that the WAC cannot stand as an obstacle to arbitration here. It applies solely to "alternative dispute resolution"—arbitration in this case. It does not apply generally to other contracts. The FAA preempts application of this regulation that may otherwise bar arbitration in this case.[21]

Regence next argues that the agreement to arbitrate should be enforced because it is neither procedurally nor substantively unconscionable.[22] We hold that it is not procedurally unconscionable. But the provision is substantively unconscionable as unfairly one-sided.

▄ An agreement to arbitrate may be set aside " 'upon such grounds as exist at law or in equity for the revocation

[19] *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

[20] *Doctor's Assocs.*, 517 U.S. at 687 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974)).

[21] Although the issue is not squarely before us, we question whether WAC 284-43-322(4) should be read to prohibit arbitration clauses in provider agreements. Doing so could be read as an invalid exercise of the agency's rule-making authority. *See Horan v. Marquardt*, 29 Wn. App. 801, 804, 630 P.2d 947 (1981); *H&H P'ship v. State*, 115 Wn. App. 164, 170, 62 P.3d 510 (2003) (An administrative agency "cannot modify or amend a statute by regulation," and a "rule that conflicts with a statute is beyond an agency's authority and invalidation of the rule is proper."). We need not decide that question now.

[22] At oral argument, Regence appeared to take the position that the arbitration should address enforceability of the agreement. We reject this argument. Enforceability is a gateway matter traditionally addressed in the first instance by courts. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (In certain limited circumstances, courts assume that the parties intended for courts to decide a particular arbitration-related matter including gateway matters such as whether the parties have a valid arbitration agreement at all.).

of *any* contract.' "[23] Kruger asserts that unconscionability bars enforcement of the arbitration provision in this case.

"The argument that an arbitration agreement or clause is unconscionable or otherwise unenforceable requires consideration of both federal and state law."[24] "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts."[25] The application of general principles of state contract law, such as unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA.[26]

Washington recognizes two types of unconscionability—substantive and procedural.[27] Contracts of adhesion are not per se unconscionable.[28] All of the circumstances of a transaction must be considered to determine unconscionability.[29] Whether a contract is unconscionable is a question of law.[30]

*Procedural Unconscionability*

Regence argues that the agreement to arbitrate is not procedurally unconscionable on the basis that Kruger lacked a meaningful choice. We agree.

[23] *Doctor's Assocs.*, 517 U.S. at 686 (quoting 9 U.S.C. § 2).

[24] *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004).

[25] *Iberia*, 379 F.3d at 166.

[26] *Iberia*, 379 F.3d at 166.

[27] *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 586, 998 P.2d 305 (2000).

[28] *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 459, 45 P.3d 594 (2002) (That an agreement constitutes a contract of adhesion is insufficient alone to support a finding that the agreement is procedurally unconscionable in Washington.); *see also Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993) (noting that elements of adhesion contract are considered in the "circumstances" element of the procedural unconscionability inquiry).

[29] *Nelson v. McGoldrick*, 127 Wn.2d 124, 136, 896 P.2d 1258 (1995).

[30] *Nelson*, 127 Wn.2d at 131.

Procedural unconscionability occurs when an "irregularity" taints contract formation resulting in "the lack of a meaningful choice" in the circumstances, including " '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.' "[31] The burden of proof to show unconscionability rests with the party attacking the contract.

Here, Kruger does not contend that it had no reasonable opportunity to understand the terms of the contract. Rather, it contends that it had to sign the agreement to "protect and promote its business interests." Moreover, the agreement to arbitrate is not hidden. It is in the same type size as the rest of the provider agreement.

Kruger contends it had no meaningful choice as to arbitration provisions if it wanted to continue to receive patients from Regence. Kruger cites *Iwen v. U.S. West Direct*,[32] for the proposition that arbitration clauses that allow for no meaningful choice whether to arbitrate are unconscionable. However, *Iwen* is distinguishable. In that case the arbitration clause was unconscionable because only one party was required to arbitrate its disputes.[33] Here, both parties are bound to arbitrate. Kruger also claims that failure to agree to arbitrate would have been detrimental to its business interests. We know of no persuasive authority that supports a claim of procedural unconscionability based solely on protection and promotion of one's business interest. There was no procedural unconscionability here like that in *Iwen*.

Kruger next cites *Graham v. Scissor-Tail, Inc.*,[34] for the proposition that an arbitration clause in a form contract is unconscionable where a savvy professional is reduced to the

---

[31] *Mendez*, 111 Wn. App. at 459 (quoting *Nelson*, 127 Wn.2d at 131).

[32] 1999 MT 63, 293 Mont. 512, 977 P.2d 989.

[33] *Iwen*, 977 P.2d at 995-96.

[34] 28 Cal. 3d 807, 623 P.2d 165, 171 Cal. Rptr. 604 (1981).

role of adherent. But, the court in *Graham* also concluded the arbitration clause was unconscionable because the labor union of one of the parties was allowed to designate the arbitrator. Because of the potential to select a biased arbitrator, the agreement to arbitrate was determined to be unconscionable and unenforceable as written.[35] Further, the court in *Graham* remanded the case so that the parties could designate an impartial arbitrator and establish a fair procedure.

## Substantive Unconscionability

Regence also contends that the arbitration provision is not substantively unconscionable. We disagree.

Substantive unconscionability occurs when contract terms are "one-sided or overly harsh."[36] "Shocking to the conscience," "monstrously harsh," and "exceedingly calloused" are terms also used to define substantive unconscionability.[37] Parties must be given wide latitude to contract, even if a decidedly one-sided agreement results.[38] But the FAA sets forth grounds upon which a court may vacate an arbitration award and among those grounds is "evident partiality" of an arbitrator.[39]

There are two substantive provisions at issue here. The first is that the terms of the arbitration provision state "all determinations of [Regence] shall be afforded deference." The second is that "the standards to be applied by the arbitrator shall be whether [Regence] has acted arbitrarily and capriciously."

There can be no doubt that the provisions before us are one-sided. They require the arbitrator to defer to all deci-

---

[35] *Graham*, 623 P.2d at 178.

[36] *Nelson*, 127 Wn.2d at 131.

[37] *Nelson*, 127 Wn.2d at 131.

[38] *Nelson*, 127 Wn.2d at 135.

[39] *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 82 (2d Cir. 1984).

sions by Regence and impose a very narrow standard of review for the arbitrator to apply to those decisions. Also, there is no serious dispute that the agreement containing the arbitration provision is between two reasonably sophisticated parties. Thus, the policy considerations underlying an analysis of a consumer transaction are not at issue here.[40]

Our search for case authority reveals a number of cases in various jurisdictions that address substantive unconscionability.[41] None is precisely on point. Specifically, neither counsel nor this court has located authority that either approves or disapproves of clauses like these.

We are persuaded by the reasoning in *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir. 1984), that the clauses before us are substantively unconscionable. There, the court considered an appeal of a lower court's denial of a motion to vacate an arbitration award.[42] The issue before the court was whether a father-son relationship between an arbitrator and an officer of one party to the arbitration rises to the level of "evident partiality" required under the FAA to vacate the award.[43] Reversing the lower court's order, the court held that "evident partiality" within the meaning of the FAA would be found where a reasonable person would have to conclude that an arbitrator was partial to one

---

[40] *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002) (Consumer transactions may be invalidated for procedural or substantive unconscionability.).

[41] *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (1998) (A shrink-wrap software license which required the use of a French arbitration company, payment of an advance fee of $4,000 (half which was nonrefundable), significant travel fees borne by the consumer, and payment of the loser's attorney fees was found substantively unconscionable.); *Luna*, 236 F. Supp. 2d 1166 (a consumer loan transaction deemed to be unconscionable given the one-sidedness of the terms); *Iwen*, 1999 MT 63 (arbitration clause where only one party was obligated to arbitrate found to be unconscionable).

[42] *Morelite*, 748 F.2d at 80-81.

[43] *Morelite*, 748 F.2d at 80-81.

party.[44] The nature of the relationship between the two individuals was sufficient without proof of actual bias.[45]

Here, there are no personal relationships that would give rise to evident partiality within the meaning of the FAA. But the challenged provisions impose on the arbitrator, regardless of who that might be, standards that are clearly weighted in favor of Regence. To that extent, they are akin to the "evident partiality" provision that permits an award to be set aside.

While parties are free to make contracts to arbitrate,[46] as judges we do not relinquish our duty to ensure fairness that society demands when we are called upon to perform our limited role in arbitration proceedings.[47] Our focus, of course, is whether these provisions were substantively unconscionable at the time of the making of the agreement. We believe they were.

The provisions before us, when read together, go a long way to determining a result regardless of the evidence and the merits of the respective positions of the parties. For example, one breach of contract claim arises from an alleged commitment by Regence to equalize payments to Kruger with that of other providers. To apply these two provisions to arbitration of this claim serves no purpose other than to support a likely decision for Regence that is unfairly one-sided. Likewise, the breach of contract claim involving the question of how to classify the patient reimbursement appears unfairly one-sided. Regence fails to explain how the application of the challenged provisions is anything other than unconscionable.

In sum, we conclude these two provisions, taken together, are substantively unconscionable and are not enforceable. They are stricken.

---

[44] *Morelite*, 748 F.2d at 84.

[45] *Morelite*, 748 F.2d at 85.

[46] *Stein v. Geonerco, Inc.*, 105 Wn. App. 41, 45-46, 17 P.3d 1266 (2001).

[47] *See Morelite*, 748 F.2d at 84.

*Severability*

Regence argues that if the agreement to arbitrate is not enforceable as written, any offending provision should be severed. We agree.

 Here, while the deference allowed Regence in arbitration and the standard of review demanded by the arbitrator are unenforceable, the parties' agreement contains a severability provision that states:

> In the event any provision of this Agreement is held to be invalid or unenforceable, the remainder of the provisions of this Agreement shall remain in full force and effect.

We conclude that the unenforceable provisions that we have discussed may be severed, and the remainder of the arbitration provision enforced.

We reverse the order denying the motion to compel arbitration and remand for the superior court to enter an order staying this case pending arbitration.

COLEMAN and SCHINDLER, JJ., concur.

Reconsideration denied February 7, 2005.