[Nos. 76719-0; 76886-2. En Banc.]
Argued February 28, 2006. Decided July 13, 2006.

KRUGER CLINIC ORTHOPAEDICS, L.L.C., *Petitioner,* v. REGENCE BLUESHIELD, *Respondent.*

TACOMA ORTHOPAEDIC SURGEONS, INC., ET AL., *Petitioners,* v. REGENCE BLUESHIELD, *Respondent.*

292

*J. Richard Creatura* and *James W. Beck* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*) and *Thomas Jeffrey Keane* (of *Law Offices of Jeffrey Keane, P.L.L.C.*), for petitioners.

*David D. Swartling* and *Stephania Camp Denton* (of *Mill Meyers Swartling*), for respondent.

*Timothy L. Ashcraft* on behalf of Pierce County Medical Society, amicus curiae.

*Andrew K. Dolan* on behalf of Snohomish County Medical Society and Washington State Medical Association, amici curiae.

*Robert M. McKenna, Attorney General,* and *Elizabeth Christina Beusch, Assistant,* on behalf of Washington State Insurance Commissioner, amicus curiae.

*Martin L. Ziontz* on behalf of Washington State Podiatric Medical Association, amicus curiae.

*Debra L.W. Stephens* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 Owens, J. — Insurance carrier Regence BlueShield (Regence) provides its insureds with health care services on a prepaid basis through subscriber agreements. Regence contracts with health care providers who agree to serve Regence's insureds on a fee-for-service basis. At issue in these consolidated cases is the enforceability of the arbitration clauses in the provider agreements that Regence entered into with Kruger Clinic Orthopaedics (Kruger) and with Tacoma Orthopaedic Surgeons and others (collectively, the Tacoma Orthopaedic providers).

¶2 We conclude that the Federal Arbitration Act (FAA), 9 U.S.C. § 2, does not preempt RCW 48.43.055 and WAC 284-43-322(4), which prohibit health insurance carriers from requiring providers to engage in "alternative dispute resolution *to the exclusion of judicial remedies*." WAC 284-43-322(4) (emphasis added). We hold that, by permitting only limited judicial review of the arbitration decision, the arbitration provisions in both cases exclude "judicial remedies" in violation of the governing statute and regulation. We therefore invalidate the arbitration provisions in the provider agreements and reverse the Court of Appeals in both cases.

## FACTS

¶3 *Kruger*. In April 1995, Kruger signed a "Participating Provider's Agreement" with Regence. Under the agreement, Kruger was required to accept payment for services at rates set by Regence outside the contract.[1] When Regence notified Kruger in early 2000 that Kruger would have to accept a reduction in pay rates, Kruger objected and questioned, in particular, Regence's practice of paying other similarly situated providers at higher rates for the same services. A second dispute arose over Regence's refusal to reimburse Kruger for the cost of implant materials essential in certain surgeries. Kruger's informal efforts to resolve the underpayment issues failed.

¶4 On April 25, 2002, Kruger filed suit in Snohomish County Superior Court for breach of contract. Regence immediately moved to compel arbitration, based on the following provision:

In the event that any problem or dispute concerning the terms of this Agreement is not satisfactorily resolved, the COMPANY

---

[1] "The PROVIDER shall accept the payment allowances established by the COMPANY as payment in full for covered services rendered to patients of the COMPANY .... The payment allowances made by the COMPANY may vary for services rendered in different geographical areas and shall be based on the methodology determined by the COMPANY which may include, but shall not be limited to: a profile system, a fee schedule, a relative value scale, or PROVIDER performance. The COMPANY reserves the right to alter the payment methodology and levels from time to time, at its discretion." Kruger Clerk's Papers (CP) at 54.

and the PROVIDER agree to arbitrate such problem or dispute. Such arbitration may be initiated by either party by making a written demand for arbitration on the other party. Within twenty days of that demand, the COMPANY and the PROVIDER shall confer to select a mutually agreeable arbitration [sic]. The arbitrator shall hold a hearing and decide the matter within thirty days thereafter. The arbitration shall be conducted pursuant to the rules of the American Arbitration Association then in effect unless agreed otherwise by the parties. *The results of the arbitration shall be binding on both parties*, and the parties agree that *all determinations of the COMPANY shall be afforded deference*, and *the standards to be applied by the arbitrator shall be whether the COMPANY has acted arbitrarily and capriciously with the burden of proof being on the PROVIDER. Neither party subsequently shall commence an action to litigate the dispute.*

Kruger Clerk's Papers (CP) at 59 (emphasis added). After the trial court denied Regence's motion to compel arbitration, Regence sought review in the Court of Appeals.

¶5 In a published decision filed September 20, 2004, Division One of the Court of Appeals reversed the trial court and held that the arbitration agreement was valid and enforceable. Specifically, the court determined that the FAA governed the issue of the arbitration provision's validity; that the arbitration provision was not procedurally unconscionable; and that, although the arbitration provision contained some substantively unconscionable terms,[2] those terms were severable, permitting enforceability of the remainder of the arbitration provision. *Kruger Clinic Orthopaedics, L.L.C. v. Regence BlueShield*, 123 Wn. App. 355, 98 P.3d 66 (2004).

¶6 *Tacoma Orthopaedic*. On March 22, 2002, the Tacoma Orthopaedic providers filed a class action complaint against Regence in Pierce County Superior Court, alleging that Regence had repeatedly breached its agreements with the Tacoma Orthopaedic providers by systematically reducing

---

[2] The Court of Appeals deemed "unfairly one-sided" the requirements that Regence be accorded deference and that the providers carry the burden of proving arbitrary and capricious action. *Kruger Clinic Orthopaedics, L.L.C. v. Regence BlueShield*, 123 Wn. App. 355, 372, 98 P.3d 66 (2004).

payments for services. The Tacoma Orthopaedic providers stated several causes of action, including breach of contract and breach of the implied covenant of good faith and fair dealing. Regence filed a motion to dismiss for failure to exhaust nonjudicial remedies and an alternative motion to compel arbitration. Regence's motions were based on the following provision:

> **Arbitration**. *Prior to seeking judicial remedy*, any claims or disputes between the parties arising out of or relating to this Agreement that cannot be resolved through the internal appeals process shall be submitted to arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association then in effect. . . .
>
> . . . .
>
> . . . Judgment upon an award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Tacoma Orthopaedic* CP at 255-56 (emphasis added). Holding as a matter of law that the arbitration clause was enforceable, the trial court granted Regence's motion to compel arbitration. The trial court denied the Tacoma Orthopaedic providers' subsequent motion to certify an arbitral class. The providers voluntarily dismissed all of their claims without prejudice and sought review in the Court of Appeals.

¶7 In an unpublished decision filed January 11, 2005, Division Two of the Court of Appeals affirmed the trial court on all issues. The court held that the agreement was neither procedurally nor substantively unconscionable; that doctrines of futility and bad faith did not justify setting aside the arbitration provision; that a jury trial on the arbitrability issue was not warranted; and that the trial court had not erred in denying certification of an arbitral class. *Tacoma Orthopaedic Surgeons, Inc. v. Regence BlueShield*, noted at 125 Wn. App. 1005, 2005 Wash. App. LEXIS 56.

¶8 Kruger and the Tacoma Orthopaedic providers filed petitions for review. We granted their petitions, as well as their request to consolidate the cases.

## ISSUE

¶9 Does the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), save RCW 48.43.055 and WAC 284-43-322(4) from preemption by the FAA? If so, do the statute and WAC regulation render invalid and unenforceable the arbitration provisions at issue in *Kruger* and *Tacoma Orthopaedic*?

## ANALYSIS

¶10 *Standard of Review.* Review of a trial court's decision to grant or deny a motion to compel arbitration is de novo. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). The petitioners in these consolidated cases bear the burden of proving the unenforceability of the arbitration provisions at issue. *Id.* The "[i]nterpretation of a statute and its implementing regulations is a question of law," which an appellate court reviews de novo. *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 154, 60 P.3d 53 (2002).

¶11 *Effect of RCW 48.43.055 and WAC 284-43-322(4) on Validity of Arbitration Provisions.* RCW 48.43.055 provides that "[e]ach health carrier as defined under RCW 48.43.005 shall file with the commissioner its procedures for review and adjudication of complaints initiated by health care providers." The provision further requires that those procedures afford health care providers "a fair review" of disputed issues:

> Procedures filed under this section shall provide *a fair review* for consideration of complaints. Every health carrier shall provide reasonable means allowing any health care provider aggrieved by actions of the health carrier to be heard after submitting a written request for review. If the health carrier fails to grant or reject a request within thirty days after it is made, *the complaining health care provider may proceed as if the complaint had been rejected. A complaint that has been rejected by the health carrier may be submitted to nonbinding mediation.* Mediation shall be conducted under chapter 7.07

RCW, or any other rules of mediation agreed to by the parties. This section is solely for resolution of provider complaints.

*Id.* (emphasis added). WAC 284-43-322, a regulation promulgated pursuant to the statute, sets forth certain criteria that must be met before the dispute resolution process in a contract between a health carrier and a participating provider will "be considered *fair under RCW 48.43.055.*" (Emphasis added.) By expressly permitting "nonbinding mediation," RCW 48.43.055 indicates that any *binding* form of alternative dispute resolution (ADR) would not provide "a fair review." That presumption is made explicit in WAC 284-43-322(4): "Carriers may not require alternative dispute resolution *to the exclusion of judicial remedies*; however, carriers may require alternative dispute resolution *prior to judicial remedies.*" (Emphasis added.)

■ ¶12 As a "health care service contractor,"[3] Regence is a "health carrier" as defined under RCW 48.43.005[4] and is thus subject to the requirements of RCW 48.43.055 and WAC 284-43-322. Kruger and the Tacoma Orthopaedic providers contend that the arbitration provisions in their agreements with Regence violate WAC 284-43-322(4) because they effectively eliminate "judicial remedies." In *Kruger*, the Court of Appeals "[a]ssum[ed] without deciding that [the arbitration] provision should be fairly read as an exclusion of judicial remedies"[5] but went on to determine that WAC 284-43-322(4) was preempted by the FAA and thus provided no basis for invalidating the arbitration provision. 123 Wn. App. at 366.

---

[3] " 'Health care service contractor' means any corporation, cooperative group, or association, which is sponsored by or otherwise intimately connected with a provider or group of providers, who or which not otherwise being engaged in the insurance business, accepts prepayment for health care services from or for the benefit of persons or groups of persons as consideration for providing such persons with any health care services." RCW 48.44.010(3).

[4] " 'Health carrier' or 'carrier' means . . . a health care service contractor as defined in RCW 48.44.010, or a health maintenance organization as defined in RCW 48.46.020." RCW 48.43.005(18).

[5] The arbitration provision in the Kruger-Regence agreement mandated that "[t]he results of the arbitration shall be binding on both parties" and that "[n]either party subsequently shall commence an action to litigate the dispute." Kruger CP at 59.

 ¶13 Kruger challenges the determination of the Court of Appeals that the FAA preempted RCW 48.43.055 and WAC 284-43-322(4). Kruger argues that the Washington statute and regulation are shielded from FAA preemption by § 2(b) of the federal McCarran-Ferguson Act:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State *for the purpose of regulating the business of insurance*, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That [the federal antitrust statutes] shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012(b) (first emphasis added). In Kruger's view, RCW 48.43.055 and WAC 284-43-322(4) were enacted and promulgated "for the purpose of regulating the business of insurance." *Id.* Kruger reasons that, because the FAA itself does not "specifically relate[ ] to the business of insurance" and would "invalidate, impair, or supersede" the Washington statute and WAC regulation, the FAA cannot preempt the statute and regulation. *Id.*

¶14 Accepting that Regence engages in "the business of insurance" when it enters into subscriber agreements,[6] we address the narrower question of whether the statute and WAC regulation at issue here—which directly regulate Regence's contracts with its providers—were adopted to regulate Regence's business with its insureds. The controlling case on the issue of whether a regulation governing a health care service contractor's agreement with a provider regulates "the business of insurance" within the meaning of

---

[6] *See Wash. Physicians Serv. Ass'n v. Gregoire*, 147 F.3d 1039, 1046 (9th Cir. 1998) (concluding that health care service contractors "are in the business of insurance" since they "function the same way as a traditional health insurer," promising future health care services to policyholders in exchange for a fee), *cert. denied*, 525 U.S. 1141 (1999). Health care service contractors and HMOs (health maintenance organizations) are prepaid health care delivery systems that, while not subject to the general insurance laws applicable to traditional insurers, are subject to laws made specifically applicable to them. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 152, 930 P.2d 288 (1997).

the McCarran-Ferguson Act is *United States Department of Treasury v. Fabe*, 508 U.S. 491, 113 S. Ct. 2202, 124 L. Ed. 2d 449 (1993). At issue in *Fabe* was whether a federal act giving the United States first priority as a bankruptcy creditor would preempt an Ohio statute according the federal government only fifth priority—after administrative expenses, specified wage claims, policyholders' claims, and claims of general creditors—in liquidation proceedings against an insolvent insurance company. *Id.* at 493. The Court recalled its prior observation that " '[s]tatutes aimed at *protecting* or regulating this relationship [between insurer and insured], *directly or indirectly*, are laws regulating the "business of insurance." ' " *Id.* at 501 (emphasis added) (second alteration in original) (quoting *Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 460, 89 S. Ct. 564, 21 L. Ed. 2d 668 (1969)). The *Fabe* Court stated "that the actual performance of an insurance contract [between insurer and insured] is an essential part of the 'business of insurance.' " *Id.* at 505. The Court reasoned that, "by ensuring the payment of policyholders' claims despite the insurance company's intervening bankruptcy," the Ohio statute was "integrally related to the performance of insurance contracts after bankruptcy." *Id.* at 504. The Court therefore held that the McCarran-Ferguson Act saved the Ohio statute from preemption because, "to the extent that it protects policyholders," *id.* at 493, it had been "enacted . . . for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). The Court held that, "[b]ecause the Ohio statute is 'aimed at protecting or regulating' the performance of an insurance contract, *National Securities*, 393 U.S. at 460, it follows that it is a law 'enacted for the purpose of regulating the business of insurance,' within the meaning of the first clause of § 2(b)." 508 U.S. at 505.

¶15 RCW 48.43.055 and WAC 284-43-322 meet the standard set in *National Securities* and *Fabe*.[7] The statute and

---

[7] The *Kruger* court relied on *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S. Ct. 1067, 59 L. Ed. 2d 261 (1979), but that decision dealt

regulation set forth requirements for the fair resolution of disputes arising out of agreements between carriers and providers. In regulating the carrier-provider relationship, RCW 48.43.055 and WAC 284-43-322 protect, at least indirectly, the promises that carriers make to their insureds in their subscriber agreements. In reaching this conclusion, we emphasize that we are not holding that "any law which redounds to the benefit of policyholders is, *ipso facto*, a law enacted to regulate the business of insurance." *Fabe*, 508 U.S. at 511 (Kennedy, J., dissenting). For example, while a regulation pertaining to the carrier's contract with its landlord might be financially beneficial to the carrier and thus might indirectly benefit the carrier's insureds by potentially lowering premium costs, such a regulation would not be sufficiently linked to the performance of the carrier's contract with its insureds. Here, however, the contract between the carrier and its providers is much more closely related to the agreements between the carrier and its insureds. Not only does Kruger provide the health care services that Regence's insureds need, Kruger serves as the intermediary in the claims process, filling out, submitting, and monitoring the claim forms on behalf of Regence's insureds. In sum, we conclude that, by protecting the carrier-provider relationship, RCW 48.43.055 and WAC 284-43-322 strengthen the reliability of the carrier's promises to its insureds and thereby "regulat[e] the business of insurance" within the meaning of the McCarran-Ferguson Act. Thus, reversing the Court of Appeals on this point, we hold that the McCarran-Ferguson Act shields RCW 48.43.055 and WAC 284-43-322(4) from preemption by the FAA.

---

with the narrower antitrust exemption in the proviso of § 2(b) of the McCarran-Ferguson Act. The *Fabe* Court distinguished the antitrust proviso, aimed at "carv[ing] out only a narrow exemption for 'the business of insurance' from the federal antitrust laws," from the first clause of § 2(b), which "was intended to further Congress' primary objective of granting the States broad regulatory authority over the business of insurance." 508 U.S. at 505. As the *Fabe* Court stated, the first clause of § 2(b) was "not so narrowly circumscribed" as the § 2(b) proviso at issue in *Royal Drug*. *Id.* at 504.

¶16 We therefore must reach the issue of whether, as Kruger and the Tacoma Orthopaedic providers maintain, RCW 48.43.055 and WAC 284-43-322(4) render invalid and unenforceable the arbitration provisions in their agreements with Regence. RCW 48.43.055 explicitly permits "nonbinding mediation," and the WAC regulation provides that "[c]arriers may not require alternative dispute resolution *to the exclusion of judicial remedies*" but "may require alternative dispute resolution [(ADR)] *prior to judicial remedies*." WAC 284-43-322(4) (emphasis added). Reading the statute and regulation in concert, we conclude that they were intended to authorize some preliminary form of *nonbinding* ADR, one that preserves the parties' right to pursue "judicial remedies" thereafter. In inception and by its very definition, ADR provides an alternative to the litigation of a dispute in court: ADR is "[a] procedure for settling a dispute by *means other than litigation*, such as arbitration or mediation." BLACK'S LAW DICTIONARY 86 (8th ed. 2004) (emphasis added). In general, "[p]arties are free to agree upon a variety of ADR mechanisms under Washington law to address their disputes," *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 892, 16 P.3d 617 (2001), but WAC 284-43-322(4) prohibits carriers such as Regence from imposing on providers a form of ADR "to the exclusion of judicial remedies." A "judicial remedy" is broadly defined as "[t]he means"—"granted by a court"—"of enforcing a right or preventing or redressing a wrong." BLACK'S LAW DICTIONARY 1320. By the plain language of the WAC regulation, a carrier's contract with a provider may require that the parties initially attempt to resolve disputes through some form of ADR, but the contract cannot prohibit a party from subsequently seeking a court's redress of its complaints.

¶17 In its unpublished opinion, the *Tacoma Orthopaedic* court agreed with Regence that the Washington arbitration act (WAA), chapter 7.04 RCW,[8] governed the parties' agree-

---

[8] Chapter 7.04 RCW was repealed, effective January 1, 2006. LAWS OF 2005, ch. 433, § 50.

ment to arbitrate and that the judicial review afforded under the WAA satisfied the "judicial remedies" requirement of WAC 284-43-322(4). 2005 Wash. App. LEXIS 56, at *7; *see* former RCW 7.04.160-.170 (limiting judicial review to vacation, modification, or correction of award); *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998) (observing that "[t]he shorthand description for this policy of finality is that judicial review of an arbitration award is limited to the face of the award"); *cf.* 9 U.S.C. §§ 9-11. We find untenable the two conclusions: (1) that the WAA governs the arbitration provisions at issue here and (2) that the limited judicial review available under the WAA provides the "judicial remedies" intended in WAC 284-43-322(4).

¶18 As to the first contention, although the WAA "amounts to a 'code of arbitration' governing the conduct of arbitration in Washington" (and the parties' agreements provided for arbitration proceedings "conducted pursuant to the rules of the American Arbitration Association"), we have previously recognized that the WAA must give way where "a more specific statutory enactment on arbitration applies." *Godfrey*, 142 Wn.2d at 894-95 (quoting *Davidson*, 135 Wn.2d at 117); Kruger CP at 59; *see also* Tacoma Orthopaedic CP at 255. The *Godfrey* court cited as "[a]n example of a more specific enactment" chapter 7.06 RCW, which provides for "mandatory civil arbitration of smaller civil cases (where the arbitrator's award may be tried de novo in superior court)." *Id.* at 894 n.4, 892. The statute and WAC regulation at issue in *Kruger* and *Tacoma Orthopaedic* operate as a similar exception, permitting arbitration but forbidding "the exclusion of judicial remedies." WAC 284-43-322(4). Because the WAC regulation is thus contrary to the WAA, which "does not contemplate nonbinding arbitration" and under which "there is no such thing as a trial de novo," the WAA must give way to the statute and WAC regulation at issue in these two cases. *Godfrey*, 142 Wn.2d at 894, 895.

¶19 Regarding the second rejected conclusion, the limited judicial review afforded in the WAA does not satisfy the

WAC regulation's requirement that "judicial remedies" be available subsequent to the chosen ADR process. In an analogous case, the Court of Appeals declined to compel binding arbitration pursuant to a contract provision, where an applicable statute preserved a party's right to seek redress in a "judicial proceeding." In *Marina Cove Condominium Owners Ass'n v. Isabella Estates*, 109 Wn. App. 230, 34 P.3d 870 (2001), a condominium association sued a developer under the Washington Condominium Act (WCA), chapter 64.34 RCW, for breach of implied warranties of quality, and the developer moved to compel arbitration under the parties' limited warranty agreement. Interpreting the WCA's provision that "any right or obligation declared by this chapter is enforceable *by judicial proceeding*," RCW 64.34.100(2) (emphasis added), the Court of Appeals acknowledged that "Washington courts voice a preference for arbitration in other contexts" but refused to "defy express provisions of a statute to further that policy." 109 Wn. App. at 236. As the *Marina Cove* court went on to explain, "nothing in the language of RCW 64.34.030 and .100 prevents parties from mediating or otherwise settling their disputes in any manner they wish, including nonbinding arbitration," but the WCA preserved the parties' rights to enforce the WCA provisions "by judicial proceeding should alternative methods of dispute resolution fail." *Id.* at 237. In like manner, the WAC regulation preserves the providers' right to litigate any dispute unresolved through ADR.

¶20 We hold that the arbitration provisions in Regence's provider agreements in *Kruger* and *Tacoma Orthopaedic* violate RCW 48.43.055 and WAC 284-43-322(4). The arbitration provision in *Kruger* mandates that "[t]he results of the arbitration shall be *binding* on both parties" and that "[n]either party subsequently shall commence *an action to litigate the dispute*." Kruger CP at 59 (emphasis added). Although the provision at issue in *Tacoma Orthopaedic* does not explicitly state that the arbitration will be "binding" and even appears to preserve "judicial remedies" by

stating that the parties must arbitrate "[p]rior to seeking judicial remedy," Tacoma Orthopaedic CP at 255, the distinction between the arbitration agreements in the two cases is of no significance, given that Regence has argued in both cases that it views "judicial remedies" as nothing more than the limited judicial review afforded under the WAA. We conclude that the arbitration provisions in the provider agreements in *Kruger* and *Tacoma Orthopaedic* are invalid and unenforceable.

## CONCLUSION

¶21 Contrary to the conclusion of the Court of Appeals in *Kruger*, we hold that the McCarran-Ferguson Act shields RCW 48.43.055 and WAC 284-43-322(4) from preemption by the FAA. By protecting the carrier-provider relationship, the statute and WAC regulation strengthen the reliability of the health insurance carrier's promises to its insureds and thereby "regulat[e] the business of insurance" within the meaning of the McCarran-Ferguson Act. 15 U.S.C. § 1012(b). The WAC regulation, in tandem with RCW 48.43.055, prohibits health insurance carriers from imposing on health care providers a binding form of dispute resolution, one that would eliminate the providers' right to seek "judicial remedies." WAC 284-43-322(4). We hold that the arbitration provisions at issue in these consolidated cases violate the statute and WAC regulation by requiring binding arbitration and allowing only the limited judicial review permitted under the WAA. Because we invalidate the arbitration provisions as contrary to RCW 48.43.055 and WAC 284-43-322(4), we do not reach the providers' alternative arguments based on the doctrines of unconscionability or breach of the implied covenant of good faith and fair dealing. We reverse the Court of Appeals decisions in both cases, effectively affirming the trial court's order in

*Kruger*, denying Regence's motion to compel arbitration, and overturning the trial court's order in *Tacoma Orthopaedic* granting Regence's motion to compel arbitration.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.